UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMMAR HARRIS, | Case No. 2:22-cv-00293-CDS-NJK |
| Plaintiff, | SCREENING ORDER |
| v. | |
| CHARLES DANIELS, *et al.*, | |
| Defendants. | |

Plaintiff Ammar Harris, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint (ECF No. 1-1), and has filed an application to proceed *in forma pauperis* (ECF No. 11), an objection (ECF No. 9), and a motion to strike his application to proceed *in forma pauperis* (ECF No. 13).

As an initial matter, Plaintiff purports to bring his lawsuit under 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 1988, 42 U.S.C. § 12101, and 28 U.S.C. § 794 as well as the Fifth, Eighth, Ninth, and Fourteenth Amendments of the U.S. Constitution. ECF No. 1-1 at 2. Plaintiff asserts his constitutional claims directly under the Constitution and not by way of 42 U.S.C. § 1983. However, a plaintiff may not sue a state defendant directly under the Constitution where § 1983 provides a remedy. *See Martinez v. City of Los Angeles*, 141 F.3d 1373, 1382 (9th Cir. 1998). Nonetheless, the Court liberally construes Plaintiff's complaint as raising his constitutional claims under § 1983 based on his attempt to invoke jurisdiction through other civil rights statutes such as 28 U.S.C. § 1343 (civil rights and elective franchise) and 42 U.S.C. § 1988 (proceedings in vindication of civil rights).

The Court now addresses the matter of the filing fee, the objection, and screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

I.    **FILING FEE**

To initiate a civil lawsuit in federal court, a litigant must pay the full filing fee of $402, which includes the $350 statutory filing fee and $52 administrative fee. *See* 28 U.S.C. § 1914(a)-

(c). If a litigant is unable to pay the $402 filing fee, he or she may apply to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(2). The full filing fee for a civil action for a petition for a writ of habeas corpus is $5. *See* 28 U.S.C. § 1914(a).

In this case, Plaintiff filed an application to proceed *in forma pauperis*. ECF No. 11. However, after Plaintiff paid $5 toward his filing fee (ECF No. 12), he filed a motion to strike his *in forma pauperis* application as moot because he paid the full filing fee of $5. ECF No. 13.

The Court denies Plaintiff's motion to strike his *in forma pauperis* application. ECF No. 13. Plaintiff initiated a civil rights action in this case by submitting a complaint. *See* ECF No. 1-1. Plaintiff did not submit a petition for writ of habeas corpus. As such, the full filing fee for this matter is $402. The Court defers a decision on the application to proceed *in forma pauperis*. ECF No. 11. Plaintiff's $5 payment will go toward the filing fee in this case.

## II.    OBJECTION

In an earlier order, U.S. Magistrate Judge Nancy Koppe denied Plaintiff's motion to file a class action lawsuit. ECF No. 8. Plaintiff filed an objection on grounds that only a district court judge can deny a request for a class action lawsuit. ECF No. 9. The Court grants in part and denies in part the objection.

The Court grants in part Plaintiff's objection that only a district court judge may deny a request for a class action lawsuit. *See* 28 U.S.C. § 636(b)(1)(A). However, the Court denies Plaintiff's request for a class action lawsuit on the same grounds articulated by the federal magistrate judge. Plaintiff is a *pro se* litigant attempting to bring a class action lawsuit. *Pro se* litigants have the right to plead and conduct their own cases personally. *See* 28 U.S.C. § 1654. However, they do not have the authority to represent anyone other than themselves. *See Cato v. United States*, 70 F.3d 1103, 1105 n.1 (9th Cir. 1995); *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). As such, the Court denies Plaintiff's request to bring a *pro se* class action lawsuit.

## III.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a

governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff

must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## IV.    SCREENING OF COMPLAINT

In the complaint, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). ECF No. 1-1 at 3. Plaintiff sues Defendants NDOC Director Charles Daniels, Deputy Director Brian Williams Sr., Medical Director Michael Minev, Warden Calvin Johnson, Dr. William F., Nursing Director Jaymie Cabrera, and Doe nurses. *Id.* at 3-4. Plaintiff brings two claims and seeks declaratory and injunctive relief. *Id.* at 9, 14-16.

In claim 1, Plaintiff alleges the following: On October 19, 2021, while at HDSP, prison officials sent Plaintiff to the Las Vegas Neurology Center for a traumatic brain injury, headaches, and syncope. *Id.* at 6. Plaintiff has chronic and residual right-sided spasticity. *Id.* Prison officials had to use a wheelchair to take Plaintiff to his appointment. *Id.* Dr. Paul Janda developed a

medical plan for Plaintiff which included treating Plaintiff with 50 mg of Lyrica for pain and physical therapy and Botox for Plaintiff's spasticity. *Id.* When Plaintiff returned to HDSP, prison officials handed the medical plan to the prison medical staff. *Id.* Wilson F., Cabrera, and Does failed to act after learning about Plaintiff's medical plan on October 19, 2021.[1] *Id.* at 8.

On November 2, 2021, Plaintiff sent a medical kite and requested his medication. *Id.* at 7. Nobody responded. *Id.* On November 24, 2021, Plaintiff sent a medical kite and requested a full document evaluation pursuant to the U.S. Department of Justice's settlement agreement. *Id.* On December 6, 2021, Plaintiff sent a medical kite about the pain he was suffering from but received no response. *Id.* On December 22, 2021, Plaintiff sent a medical kite about the atrophy on his right side and physical therapy. *Id.*

On December 23, 2021, Plaintiff saw two Does and explained to them about his lack of pain medication, suffering, atrophy, and physical therapy, and requested a full documented examination. *Id.* On January 16, 2022, Plaintiff spoke to Doe during pill call and informed Doe about his prescription for Lyrica. *Id.* Doe replied, "They don't have to prescribe pain medication." *Id.*

On February 8, 2022, Plaintiff filed an emergency grievance alleging denial of medical care. *Id.* at 8. On February 9, 2022, Wilson F. responded to Plaintiff, "You can walk, you chose not to walk," in reference to Plaintiff's need for a wheelchair. *Id.* Wilson F. has never performed a full medical examination of Plaintiff and never reviewed Plaintiff's medical file. *Id.*

In claim 2, Plaintiff alleges the following: On October 19, 2021,[2] Daniels, Williams, Minev, and Johnson had the duty to train and supervise their subordinates. *Id.* at 9. They failed to protect Plaintiff from harm despite knowing that Plaintiff was in danger because of their subordinates. *Id.* Daniels, Williams, Minev, and Johnson could have or should have known about Plaintiff's medical appointment with the Las Vegas Neurology Center because someone had to authorize and approve Plaintiff's appointment. *Id.* Plaintiff had a disability which limited his

---

[1] The Court believes that Plaintiff mistakenly wrote October 19, 2022, in the complaint instead of October 19, 2021. (*See* ECF No. 1-1 at 8, ¶31).

[2] The Court believes that Plaintiff mistakenly wrote October 19, 2022, in the complaint instead of October 19, 2021. (*See* ECF No. 1-1 at 9, ¶33).

major life activities such as "walking, grooming, articulating, bathing, and other daily functions." *Id.* at 10. Plaintiff was qualified to receive medical services and reasonable accommodations based on his disabilities. *Id.*

Plaintiff alleges violations under the Fifth, Eighth, Ninth, and Fourteenth Amendments and the Americans with Disabilities Act ("ADA"). *Id.* at 6, 9-12. The Court addresses each in turn.

### A. Fifth & Ninth Amendments

The Court dismisses Plaintiff's Fifth Amendment claim with prejudice as amendment would be futile. To the extent that Plaintiff is attempting to allege due process violations against state prison officials, those claims are grounded in the Fourteenth Amendment rather than the Fifth Amendment. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (holding that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.") As such, the Court will analyze Plaintiff's due process claim under the Fourteenth Amendment.

The Court also finds that Plaintiff fails to state a colorable Ninth Amendment claim. The Ninth Amendment "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991)). The Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). The Court dismisses Plaintiff's Ninth Amendment claim with prejudice as amendment would be futile.

### B. Eighth Amendment

The Court interprets Plaintiff's allegations as bringing an Eighth Amendment deliberate indifference to serious medical needs claim. The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official

violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082–83 (9th Cir. 2014).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

The Court finds that Plaintiff states a colorable claim for deliberate indifference to serious medical needs. Based on the allegations, Plaintiff has serious medical needs involving traumatic brain injury, headaches, syncope, and chronic and residual right-sided spasticity. Based on the allegations, prison officials sought outside treatment for Plaintiff's medical needs and Plaintiff obtained a medical treatment plan from the outside provider. However, according to the allegations, William F., Cabrera, and Doe nurses intentionally ignored the outside provider's medical treatment plan for pain medication and physical therapy and caused Plaintiff to remain in pain and his body to atrophy despite Plaintiff's numerous medical kites. This claim

1    will proceed against Defendants William F., Cabrera, and Doe nurses when Plaintiff learns their

2    identities.[3]

3        Although Plaintiff alleges that Daniels, Williams, Minev, and Johnson should have

4    known that Plaintiff had medical issues and failed to protect Plaintiff because of their

5    subordinates, these allegations are insufficient to state that Daniels, Williams, Minev, and

6    Johnson violated Plaintiff's Eighth Amendment rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th

7    Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his

8    subordinates if the supervisor participated in or directed the violations, or knew of the

9    violations and failed to act to prevent them. There is no respondeat superior liability under

10   [§]1983"). These allegations are too vague to demonstrate that Daniels, Williams, Minev, or

11   Johnson knew about Plaintiff's medical issues and/or knew that the medical staff was ignoring

12   Plaintiff's treatment plan. Even though Plaintiff fails to demonstrate that these defendants were

13   personally involved with the decisions giving rise to Plaintiff's Eighth Amendment claim, the

14   Court will permit Plaintiff to maintain an injunctive relief claim against Daniels, Williams,

15   Minev, and Johnson. *See Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (permitting an

16   injunctive relief claim to proceed against a supervisor because "he would be responsible for

17   ensuring that injunctive relief was carried out, even if he was not personally involved in the

18   decision giving rise to [the plaintiff's] claims").

19       C.    **Fourteenth Amendment**

20       Plaintiff does not identify what type of Fourteenth Amendment claim he is attempting to

21   raise in his complaint nor does Plaintiff make any allegations that would support a Fourteenth

22   Amendment claim.

23       To the extent that Plaintiff is attempting to raise a Fourteenth Amendment due process

24   claim based on the non-responsiveness to his medical kites, Plaintiff fails to state a claim.

25

26   ---

27   [3]    Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Plaintiff may move to substitute the true names of Doe Defendant(s) to assert claims against the Doe Defendant(s) at that time.

28

1   Prisoners have no stand-alone due process rights related to the administrative grievance process.

2   *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy

3   statements establishing a grievance procedure do not create a constitutionally protected liberty

4   interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty

5   interest in the processing of appeals because there is no liberty interest entitling inmates to a

6   specific grievance process).

7   **D.      ADA and Rehabilitation Act[4]**

8   Both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the

9   Rehabilitation Act ("RA"), 29 U.S.C. § 794 or Section 5, apply in the prison context. *Armstrong v.*

10  *Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Pursuant to the ADA, "no qualified individual

11  with a disability shall, by reason of such disability, be excluded from participation in or be

12  denied the benefits of the services, programs, or activities of a public entity, or be subjected to

13  discrimination by any such entity." 42 U.S.C. § 12132. Pursuant to the Rehabilitation Act, "[n]o

14  otherwise qualified individual with a disability in the United States . . . shall, solely by reason of

15  her or his disability, be excluded from the participation in, be denied the benefits of, or be

16  subjected to discrimination under any program or activity receiving Federal financial

17  assistance." 29 U.S.C. § 794(a). A prison inmate states a colorable claim under both the ADA

18  and RA if he alleges that he was "improperly excluded from participation in, and denied the

19  benefits of, a prison service, program, or activity on the basis of his physical handicap."

20  *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).

21  Although the ADA does not expressly provide for reasonable accommodations, the

22  implementing regulations provide that "[a] public entity shall make reasonable modifications in

23  policies, practices, or procedures when the modifications are necessary to avoid discrimination

24  on the basis of disability, unless the public entity can demonstrate that making the

25  modifications would fundamentally alter the nature of the service, program, or activity." 28

26  C.F.R. § 35.130(b)(7). The Supreme Court has held that a prisoner may state an ADA claim based

27  on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-

28

---

[4] The Court interprets the complaint as raising a Rehabilitation Act claim because Plaintiff listed 29 U.S.C. § 794 as part of his jurisdictional basis. ECF No. 1-1 at 2.

related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *United States v. Georgia*, 546 U.S. 151, 157 (2006). Courts apply the same analysis to claims brought under the ADA and RA. *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

The Ninth Circuit has held that "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010). "Courts hold that allowing prisoners to utilize the ADA and RA as causes of action for not receiving medical treatment is simply making 'an end run around the Eighth Amendment.'" *King v. Calderwood*, 2:13-cv-02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister*, 3:11-cv-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

Therefore, in the context of prison medical services, to state a colorable ADA claim at the screening stage, a plaintiff must allege more than a lack of adequate treatment or negligence or deliberate indifference to serious medical needs; he must allege facts sufficient to show that he was denied the benefits of the prison's medical services program because of his disability. *See Postawko v. Missouri Dep't of Corr.*, No. 2:16-cv-04219-NKL, 2017 WL 1968317, at *12–13 (W.D. Mo. May 11, 2017) (denial of medication services because of hepatitis); *see also McNally v. Prison Health Servs.*, 46 F.Supp.2d 49, 58-59 (D. Me. 1999) (denial of prescription medication services because of HIV).

The Court dismisses Plaintiff's ADA/RA claim without prejudice with leave to amend. Plaintiff's complaint seems to only allege Eighth Amendment deliberate indifference to serious medical needs and does not demonstrate that prison officials denied Plaintiff benefits of the medical services program because of his disabilities. Additionally, although Plaintiff mentions the term "reasonable accommodations" in his complaint, he does not set forth a claim for reasonable accommodations. *See* ECF No. 1-1 at 12.

1    E.    **Leave to Amend**

2        Although the Court grants Plaintiff leave to amend, it does not grant Plaintiff leave to

3    amend in any way that he sees fit.  Plaintiff has leave to amend to allege additional true facts, if

4    he can, to show an ADA/RA claim. The Court does not give Plaintiff leave to assert new claims.

5        If Plaintiff chooses to file an amended complaint, he is advised that an amended

6    complaint replaces the original complaint, so the amended complaint must be complete in itself.

7    *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding

8    that "[t]he fact that a party was named in the original complaint is irrelevant; an amended

9    pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012)

10    (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such

11    claims in a subsequent amended complaint to preserve them for appeal).  This means that the

12    amended complaint must contain all facts and claims and identify all defendants that he intends

13    to sue, including the Eighth Amendment claim found colorable in this order. He must file the

14    amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled

15    "First Amended Complaint." Plaintiff must follow the instructions on the form. He need not and

16    should not allege very many facts in the "nature of the case" section of the form. Rather, in each

17    claim, he should allege facts sufficient to show what each defendant did to violate his civil

18    rights. He must file the amended complaint within 30 days from the date of this order. If Plaintiff

19    chooses not to file an amended complaint curing the stated deficiencies, this action will proceed

20    only on the Eighth Amendment claim for deliberate indifference to serious medical needs against

21    Defendants William F., Cabrera, and Doe nurses when Plaintiff learns their identities and

22    against Defendants Daniels, Williams, Minev, and Johnson for injunctive relief only.

23    V.    **CONCLUSION**

24        It is therefore ordered that the objection (ECF No. 9) is granted in part and denied in

25    part.

26        It is further ordered that the motion to strike the application to proceed *in forma pauperis*

27    (ECF No. 13) is denied.

28

1    It is further ordered that a decision on the application to proceed *in forma pauperis* (ECF

2  No. 11) is deferred.

3    It is further ordered that the Clerk of the Court file the complaint (ECF No. 1-1).

4    It is further ordered that the Clerk of the Court will add Jaymie Cabrera to the docket

5  sheet as a defendant in this case (*see* ECF No. 1-1 at 4).

6    It is further ordered that the Fifth and Ninth Amendment claims are dismissed with

7  prejudice as amendment would be futile.

8    It is further ordered that the Eighth Amendment claim for deliberate indifference to

9  serious medical needs will proceed against Defendants William F., Cabrera, and Doe nurses

10  when Plaintiff learns their identities.  This claim may also proceed against Defendants Daniels,

11  Williams, Minev, and Johnson for injunctive relief only.

12    It is further ordered that the Fourteenth Amendment claim is dismissed without

13  prejudice.

14    It is further ordered that the ADA/RA claim is dismissed without prejudice with leave to

15  amend.

16    It is further ordered that, if Plaintiff chooses to file an amended complaint curing the

17  deficiencies of his ADA/RA claim, as outlined in this order, Plaintiff will file the amended

18  complaint within 30 days from the date of entry of this order.

19    It is further ordered that the Clerk of the Court will send to Plaintiff the approved form

20  for filing a § 1983 complaint, instructions for the same, and a copy of his original complaint (ECF

21  No. 1-1).  If Plaintiff chooses to file an amended complaint, he should use the approved form and

22  he will write the words "First Amended" above the words "Civil Rights Complaint" in the

23  caption.

24    It is further ordered that, if Plaintiff chooses to file an amended complaint, the Court will

25  screen the amended complaint in a separate screening order. The screening process will take

26  several months.

27    It is further ordered that, if Plaintiff chooses not to file an amended complaint curing the

28  stated deficiencies of the complaint, this action will proceed immediately on the Eighth

Amendment claim for deliberate indifference to serious medical needs against Defendants William F., Cabrera, and Doe nurses when Plaintiff learns their identities and against Defendants Daniels, Williams, Minev, and Johnson for injunctive relief only.

DATED this 2nd day of June, 2022.

_____
UNITED STATES DISTRICT JUDGE